UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-cr-20342-BLOOM

UNITED STATES OF AMERICA,
        Plaintiff,

vs.

JORGE VAZQUEZ-TORRES,
        Defendant.
_____

## RENEWED MOTION FOR COMPASSIONATE RELEASE

Defendant, Jorge Vazquez-Torres, by and through undersigned counsel, respectfully moves this Court to reconsider his previously filed motion for compassionate release (DE 46, DE 49), in light of new developments in this case.

On May 4, 2020, this Court issued a decision denying Mr. Vazquez-Torres's request for compassionate release. (DE 53). The Court concluded that Mr. Vazquez Torres had "failed to demonstrate that the applicable § 3553(a) factors weigh in favor of a sentence modification or that extraordinary and compelling circumstances exist that warrant his release to home confinement." *Id.* at 6. Because the Court found that Mr. Vazquez-Torres had not established extraordinary and compelling circumstances, the Court did not reach the question of whether Mr. Vazquez-Torres presented a danger to the community. *Id.* at 8, n.3.

In the meantime, Mr. Vazquez-Torres has contracted Covid-19.

Mr. Vazquez-Torres now renews his compassionate release request based on two developments. First, since he filed his motion, the Department of Justice has

issued new internal guidance "conced[ing] that Defendants who have certain CDC risk factors . . . can establish that 'extraordinary and compelling reasons' warrant the reduction in sentence." *See United States v. Firebaugh*, 16-cr-20341-UU, Government's Supplemental Response (DE 43) (S.D. Fla. June 1, 2020).¹ Mr. Vazquez-Torres has *two* of the high-risk factors identified by the DOJ: diabetes and hypertension. Thus, per the DOJ's new policy, extraordinary and compelling reasons have been established in Mr. Vazquez-Torres's case to warrant a reduction in sentence here. Mr. Vazquez-Torres asks the Court to reconsider Mr. Vazquez-Torres's request for compassionate release in light of this new government policy,

---

¹ As recent government filings within this district have explained, DOJ internal guidance now directs the government to "concede that Defendants who have certain CDC risk factors, including:
   1. Asthma (moderate to severe)
   2. Chronic kidney disease being treated with dialysis
   3. Chronic lung disease, such as chronic obstructive pulmonary disease (COPD) (including emphysema and chronic bronchitis), idiopathic pulmonary fibrosis, and cystic fibrosis
   4. Diabetes, including type 1, type 2, or gestational
   5. Hemoglobin disorders, such as sickle cell disease and thalassemia
   6. Immunocompromised, including from cancer treatment, bone marrow or organ transplantation, immune deficiencies, HIV with a low CD4 cell count or not on HIV treatment, and prolonged use of corticosteroids and other immune weakening medications
   7. Liver disease, including cirrhosis
   8. Serious heart conditions, including heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension; and/or
   9. Severe obesity, defined as a body mass index (BMI) of 40 or above

can establish that 'extraordinary and compelling reasons' warrant the reduction in sentence." *United States v. Firebaugh*, 16-cr-20341-UU, Government's Supplemental Response (DE 43) (S.D. Fla. June 1, 2020); *see United States v. Feucht*, 11-cr-60025-DMM, Government's Response, DE 51 (S.D. Fla. May 26, 2020) ("Pursuant to policy directives of the Attorney General, the Government agrees that the defendant's serious medical condition (diabetes) presents an extraordinary and compelling reason that would allow compassionate release under the statute and guideline policy statement. The Centers for Disease Control and Prevention ('CDC') has identified risk factors that place individuals at higher risk of severe outcomes from COVID-19. The Government acknowledges that during the current COVID-19 pandemic, an inmate who presents one of the CDC risk factors, which include diabetes, as confirmed by medical records, and who is not expected to recover from that condition, presents an extraordinary and compelling reason that would allow compassionate release under the statute and guideline policy statement, even if that condition in ordinary times would not allow compassionate release."); *see also United States v. Wright*, 8:17-cr-00388-TDC, Government's Supplemental Response, ECF No. 50 (D.Md. May 19, 2020) (explaining that per DOJ guidance, "the Government concedes that the defendant's Type I diabetes, and perhaps other of her medical conditions, constitute 'extraordinary and compelling circumstance' during the current pandemic, even if these conditions in ordinary times would not allow compassionate release").

should it alter the Court's analysis.

Second, Mr. Vazquez-Torres has, in fact, contracted Covid-19. He has now been ill for several weeks, with symptoms that so far have included severe chest pains, severe coughing with bloody mucus, severe shortness of breath, headaches, fever, pain in his bones, and pain in his throat. He was first told that he had bronchitis and pneumonia; however, he received a Covid-19 positive test result this week. Mr. Vazquez-Torres requests that the Court reconsider his motion so that he may battle the illness and hopefully recover from home, where he will be far better prepared to face the medical complications he is already facing, and will continue face, as a result of this virus.

For these reasons, Mr. Vazquez-Torres requests that the Court reconsider his motion for compassionate release and reduce his sentence to time served. As outlined below, Mr. Vazquez-Torres further asks that the Court impose a special condition of home confinement for the first 17 months (the time now remaining on his sentence), followed by the additional three-year period of supervised release that the Court originally ordered.

### A. Factual Background

As this Court is familiar with Mr. Vazquez-Torres's case and his medical history, he incorporates here the factual background outlined in his previous briefing, and in the Court's Order. He thus includes here only information learned since the previous briefing cycle.

FTC Oklahoma City is continuing to struggle with an outbreak of Covid-19.

There have now been a total of 93 inmates who have tested positive at the facility, along with three staff members. So far, one inmate at the facility has died from the virus.[2] However, these case numbers are likely a drastic undercount. As another court in this district recently explained, even "[z]ero *confirmed* COVID-19 cases is not the same thing as zero COVID-19 cases" because, "due to the lack of universal testing of inmates and staff, the number of reported cases may be far lower than the actual number of cases." *United States v. Feucht*, 11-cr-60025-DMM, ECF No. 53 (S.D. Fla. May 28, 2020) (citations omitted) (granting compassionate release).

Mr. Vazquez Torres began experiencing Covid-19 symptoms in late May. He has been tested three times for the virus since he first exhibited symptoms. The first test was negative, and he was told that he had bronchitis and pneumonia that was unrelated to Covid-19. Since then, his symptoms have continued, and they have worsened. Based on a conversation the undersigned had with his wife, he received his first Covid-19 positive test result on June 17, 2020. So far, his symptoms have included severe chest pains, severe coughing with bloody mucus, severe shortness of breath, headaches, fever, pain in his bones, and pain in his throat.

**B. This Court should revisit its denial of Mr. Vazquez-Torres's request for release.**

A motion under Section 3582(c)(2) should be granted where the Court finds four things: (a) that the defendant has either exhausted his request or waited 30

---

[2] *See* BOP Covid-19 Resource Page, https://www.bop.gov/coronavirus/. Once an inmate is determined to have recovered, the BOP removes that inmate from its list of positive cases. Thus, the numbers of positive cases and recovered cases on BOP's website have been combined here, to reflect the total number of BOP- reported infections.

4

days since he submitted his request to the warden; (b) that extraordinary and compelling reasons exist; (c) that the defendant's release would not pose a danger to the community; and (d) that release would be consistent with the Section 3553(a) factors.

Though Mr. Vazquez-Torres initially filed his release motion before waiting 30 days from his initial request to the warden, this Court previously found that requiring exhaustion would likely be futile in this case. (DE 53, at 6). However, as 30 days have now passed since his initial request to the warden, Mr. Vazquez-Torres has now fully met the time-lapse requirements of the statute. Thus, his renewed request to this Court is ripe for review.

Mr. Vazquez-Torres asks this Court to reconsider its finding regarding whether extraordinary and compelling circumstances exist in this case, in light of both the new DOJ guidance regarding this prong of the analysis, and the fact that Mr. Vazquez-Torres has contracted Covid-19 and is now battling the disease. As he outlined in his original motion, Mr. Vazquez-Torres has several high-risk comorbidities for the virus, including diabetes, hypertension, and a history of asthma. According to a recent report issued by the World Health Organization, those with diabetes have been found to have a 9.2 % fatality rate when they contract the virus; for those with hypertension, the fatality rate was 8.4%.[3] Studies have also found that patients with *multiple* comorbidities, as in this case, have

---

[3] Report of the WHO-China Joint Mission on Coronavirus Disease 2019 (COVID- 19), World Health Organization (Feb. 28, 2020), at 12, https://www.who.int/docs/default-source/coronaviruse/who-china-joint-mission-on-covid-19-final-report.pdf (finding fatality rates for patients with Covid-19 and co-morbid conditions to be: "13.2% for those with cardiovascular disease, 9.2% for diabetes, 8.4% for hypertension, 8.0% for chronic respiratory disease, and 7.6% for cancer").

5

"greater disease severity" and poorer outcomes.[4]

Such startling statistics mean that there is now a "substantial risk" that, unless the Court grants compassionate release, Mr. Vazquez-Torres will, "with an unsettlingly high degree of probability, serve a life sentence." *United States v. Bess*, No. 1:16-cr-156, 2020 WL 1940809, at *10, (W.D.N.Y. Apr. 22, 2020) (granting compassionate release).

Yet many patients with preexisting conditions who develop severe Covid-19 and do not die will still experience severe illness and require hospitalization. "Most people in the higher risk categories" who contract Covid-19 "will require more advanced support: positive pressure ventilation, and in extreme cases, extracorporeal mechanical oxygenation. Such care requires highly specialized equipment in limited supply as well as an entire team of care providers, including but not limited to 1:1 or 1:2 nurse to patient ratios, respiratory therapists and intensive care physicians." Declaration of Dr. Jonathan Louis Golob, Assistant Professor at University of Michigan School of Medicine, ¶ 6, attached as Exhibit A.[5] "For high risk patients who do not die from COVID-19, a prolonged recovery is expected to be required, including the need for extensive rehabilitation for profound deconditioning, loss of digits, neurological damage, and loss of respiratory capacity."

---

[4] *See, e.g.*, Wei-jie Guan, et al., Comorbidity and its impact on 1590 patients with COVID-19 in China: a nationwide analysis; *Eur. Respir. J.*, (May 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/ PMC7098485/.

[5] Dr. Golob's declaration was prepared in connection with a different case and is attached here for informational purposes.

6

*Id.* ¶ 4.[6]  Thus, if the disease follows this trajectory for Mr. Vazquez-Torres, he would be rendered unable to independently function within the prison.[7]

Using the framework of the Sentencing Guidelines, this means that even if Mr. Vazquez-Torres survives the illness, his ability to "provide self-care" within his prison environment is likely to now be "substantially diminished."  U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).  These are "extraordinary and compelling" reasons for release.  *Id.*  Indeed, as one court recently concluded, "[n]o rationale is more compelling or extraordinary." *United States v. Foster*, No. 1:14-cr-324-02, ECF No. 191, at 10 (M.D. Pa. Apr. 3, 2020).

It is also worth noting that, since the time that Mr. Vazquez-Torres filed his original motion, numerous additional courts in this district have found extraordinary and compelling circumstances to vulnerable defendants, and granted

---

[6] *See also* Ling Mao, et al., Neurologic Manifestations of Hospitalized Patients With Coronavirus Disease 2019 in Wuhan, China, *JAMA Neurol.*, (Apr. 10, 2020); https://jamanetwork.com/journals/jamaneurology/fullarticle/2764549.

[7] Indeed, even if his current bout with Covid-19 resolves, Mr. Vazquez-Torres will not be out of the woods.  The WHO has concluded that there is "currently no evidence that people who have recovered from COVID-19 and have antibodies are protected from a second infection." World Health Organization, *"Immunity Passports" in the context of COVID-19* (Apr. 24, 2020), *available* https://www.who.int/news- room/commentaries/detail/immunity-passports-in-the-context-of-covid-19. The Centers for Disease Control says the same: "The immune response to COVID-19 is not yet understood.  Patients with MERS-CoV infection are unlikely to be re-infected shortly after they recover, but it is not yet known whether similar immune protection will be observed for patients with COVID-19."  Centers for Disease Control, Coronavirus Disease 2019, *available* https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html.

And even in those who develop an immune response, at least with other coronaviruses, "immunity seems to wane quickly."  Antonio Regalado, *What if immunity to covid-19 doesn't last?*, MIT Tech. Rev. (Apr. 27, 2020), *available* https://www.technologyreview.com/2020/04/27/1000569/how-long-are-people- immune-to-covid-19/.  Because we have only six months of experience with COVID-19, "little is known yet about the body's immune response to an infection. . . . 'That's something that's going to take a while to figure out.'" said George Rutherford, the head of infectious disease and global epidemiology at the University of California San Francisco.  Kristen V. Brown, *Coronavirus Survivors Hope for Immunity—The Reality is More Complicated*, Bloomberg (Apr. 14, 2020) https://www.bloomberg.com/news/articles/2020-04-14/do-coronavirus-survivors-have-immunity-from-reinfection-maybe.

7

compassionate release. In addition to the cases cited in Mr. Vazquez-Torres's previous motion, *see* DE 49 at 21–22, this includes: *United States v. Schumack*, 14-cr-80081-DMM, ECF No. 894 (S.D. Fla. June 10, 2020); *United States v. Rice*, 90-cr-0768-PAS, ECF No. 421 (S.D. Fla. June 8, 2020*); United States v. Chopra,* 18-cr-20668-DMM, ECF No. 607 (S.D. Fla. June 8, 2020), *United States v. Woodson,* 13-cr-20180-CMA, ECF No. 401 (S.D. Fla. June 4, 2020); *United States v. Feucht*, 11-cr-60025-DMM, ECF No. 53 (S.D. Fla. May 28, 2020); *United States v. Shwartz*, 04-cr-20365-MGC, ECF No. 237 (S.D. Fla May 20, 2020), *United States v. Barcha*, 16-cr-20549-RNS, ECF No. 1498 (S.D. Fla. May 18, 2020); *United States v. Hollander*, 18-cr-80102-RLR, ECF No. 62, 63 (S.D. Fla. May 14, 2020); *United States v. Rico,* 19-cr-20375-DPG, ECF No. 51 (S.D. Fla. May 14, 2020); *United States v. Lima*, 16-cr-20088-RNS, ECF No. 137 (S.D. Fla. May 11, 2020); *United States v. Slavkovic*, 16-cr-20171-UU, ECF No. 1311 (S.D. Fla. May 8, 2020), 16-cr-20703-DPG, ECF No. 31 (S.D. Fla. May 11, 2020); *United States v. Barbuto,* 18-cr-80122-DMM, ECF No. 314 (S.D. Fla. Apr. 28, 2020); *United States v. Sanchez*, No. 95-CR-00421-MGC, ECF No. 290 (S.D. Fla. Apr. 27, 2020); *United States v. Platten*, No. 08-cr-80148-DMM (S.D. Fla. Apr. 17, 2020); *United States v. Minor,* No. 18-cr-80152-DMM, ECF No. 35 (S.D. Fla. Apr. 17, 2020).

Because the Court did not previously find that extraordinary and compelling circumstances exist, it did not reach the question of dangerousness in its prior Order. However, Mr. Vazquez-Torres notes that the government, in its Response to his first compassionate release motion (DE 48), did not previously allege that he

8

remains a danger to any individual or to the community. Further, as outlined in detail in his original motion, Mr. Vazquez-Torres *does not* pose a danger today. He had no criminal history prior to this offense, which ended almost two years ago. And he cooperated extensively with the government, demonstrating his firm commitment to living a law-abiding life upon his release.

Finally, Mr. Vazquez-Torres also asks the Court to reconsider its finding on the § 3553(a) sentencing factors under these extraordinary circumstances. While the Court's previous Order noted that Mr. Vazquez-Torres had not yet served most of his sentence, numerous courts have recently released vulnerable defendants even when defendants had not yet served a significant portion or majority of the original sentence. *See* DE 49, at 28–29 (citing cases). As these courts have rightly concluded, the Court's original sentence—here, a sentence of 24 months in custody—was certainly not a sentence to life; or to die in custody; or to experience severe and debilitating illness far from one's family and adequate medical care.

Indeed, this includes a recent grant of compassionate release within this district. In *United States v. Chopra*, 18-cr-20668-DMM, Judge Middlebrooks granted release to a defendant who surrendered for his 48-month sentence on February 10, 2020, just two weeks before Mr. Vazquez-Torres did. Thus, Mr. Chopra had served an even smaller fraction of his sentence before he was released. As the court explained:

> I agree that it is not typical to grant compassionate release to an individual who has served such a short portion of his sentence. However, my choices in this matter are constrained by the BOP's decision not to grant Defendant a furlough. As I noted in my previous

> Order, "Furloughing Defendant appears to present the fairest option as it lessens the potentially lethal risk of Defendant contracting the COVID-19 virus, while still requiring Defendant to repay his debt to society by serving his full term of imprisonment." (DE 592). As this option is now unavailable, I have only two choices: to allow Defendant to stay in Lompoc and risk serious illness or death, or to grant him compassionate release. In making this decision, I am guided by a simple truth: I sentenced Defendant to 48 months imprisonment, not death or confinement under threat of serious illness. His crime does not justify exposing him to that level of risk.

*United States v. Chopra*, 18-cr-20668-DMM, ECF No. 606, at 10 (S.D. Fla. June 8, 2020).

If the Court believes that Mr. Vazquez-Torres still needs additional punishment, it has options short of keeping him in prison. It can, as he has requested, order that a significant portion of his supervised release term—such as the 17 months that would have remained on his sentence, until his expected release date in November 2021—be served on strict home confinement. Home confinement is not prison, but it is "a serious restriction of liberty" nevertheless. *Ilchuk v. Attorney General*, 434 F.3d 618, 623 (3d Cir. 2006); *see also Chopra*, 18-cr-20668-DMM, ECF No. 606, at 10 (S.D. Fla. June 8, 2020) (explaining that home confinement "*is a punishment*," and that because, "unlike a custodial sentence, a sentence of home confinement cannot be reduced due to good behavior," the grant of compassionate release will require the defendant to "serve the full 48-months to which he was sentenced"). Home confinement ensures that Mr. Vazquez-Torres can take measures to protect his health, while he continues to be punished for his offense. Mr. Vazquez-Torres respectfully asks the Court to consider that option here.

10

Further, because Mr. Vazquez-Torres has now contracted Covid-19, there exist new, additional reasons to grant this motion under § 3553(a), which requires the Court to consider "the need to . . . provide the defendant with needed . . . medical care . . . in the most effective manner."  18 U.S.C. § 3553(a)(2)(D).  This factor now takes on a special urgency in this case, as Mr. Vazquez-Torres will be much better prepared to face the medical complications he is currently experiencing, and will continue to experience, if he is allowed to seek care in the community.  Indeed, as one district court recently found in granting compassionate release, "a reduction of [defendant's] sentence will enable him to seek, from the doctors and hospitals of his choice, what may be better medical care than the BOP is obligated or able to provide, particularly given the very real threat that COVID-19 poses in the institutional environment."  *United States v. Williams*, No. 3:04-CR-95, 2020 WL 1751545 (N.D. Fla. Apr. 1, 2020).

If released, Mr. Vazquez-Torres will receive medical care in his own community, through his own long-term health providers.  He would receive daily assistance from his wife, and he would be able to seek any emergency medical treatment as needed.  By contrast, if he remains incarcerated, he will remain subject to the inadequate and inattentive medical treatment currently available within the BOP system.  BOP has repeatedly mismanaged the Covid-19 pandemic—and in doing so, has put many lives at risk, including Mr. Vazquez-Torres's.  As one investigative report recently found, BOP has been "unprepared for the pandemic and slow to respond," and "top officials even took measures that contributed to the

11

spread of the virus."8 It cannot now be relied upon to properly manage Mr. Vazquez-Torres's health in these dire circumstances.

Indeed, during the recent weeks that he has been ill with Covid-19, and based on conversations with his wife, Mr. Vazquez-Torres has received only acetaminophen and an antidepressant medication, and he has not received daily medical check-ups, even as his condition has deteriorated. Unfortunately, such experiences are not unique to the BOP system. Most prisons are not medical facilities, and they are not equipped to handle outbreaks of infectious diseases spreading through large portions of the population. *See* Declaration of Dr. Jaimie Meyer, DE 49, Exhibit B-1 (explaining that the "risk posed by infectious diseases in jails and prisons is significantly higher than in the community" in terms of "harm to individuals who become infected," and that "[j]ails and prisons are often poorly equipped to diagnose and manage infectious disease outbreaks").

Even for non-Covid-19 related medical concerns, under its current lockdown conditions, BOP has failed to tend to inmates' to non-emergency chronic care needs. *See, e.g.,* Complaint, *Torres v. Milusnic*, 2:20-cv-4450, ECF No. 1, at 66 (C.D. Cal. May 16, 2020) (lawsuit alleging lapses in medical care at BOP's Lompoc facility, including declaration indicating that guards have stopped accepting cop-outs for medical care, and that regular care, of the kind that existed before the outbreak, is not being provided). In Mr. Vazquez-Torres's case, the undersigned has learned that, even before he developed Covid-19 symptoms, he was not receiving regular

---

[8] The Marshall Project, *"I Begged Them To Let Me Die: How Federal Prisons Became Coronavirus Death Traps,"* June 18, 2020, at https://www.themarshallproject.org/2020/06/18/i-begged-them-to-let-me-die-how-federal-prisons-became-coronavirus-death-traps.

12

checks of his blood sugar levels or blood pressure—essential steps that are critical for regulating and properly managing both diabetes and hypertension. And at the time he filed his previous motion, Mr. Vazquez-Torres was not receiving his diabetes medication regularly. DE 49, at n.45.

The BOP has already gambled once with Mr. Vazquez-Torres's life. It has failed to follow its own pandemic protocols, and failed to adequately protect him— along with many other vulnerable inmates—from infection. There is no reason to let them do it again, when the stakes remain so high for Mr. Vazquez-Torres.

As another district court recently explained in granting compassionate release to a Covid-19 positive defendant, "The risk is simply too great that the BOP will fail to detect a decline in [defendant's] condition and, if his condition suddenly becomes even more emergent than it currently is, that the BOP will fail to provide him the specialized care he needs. The court will not play Russian roulette with [the defendant's] life." *United States v. McCall,* No. 2:18CR95-MHT, ___ F.Supp.3d ____, 2020 WL 2992197, at *2 (M.D. Ala. June 4, 2020) (granting compassionate release after an evidentiary hearing with testimony from two BOP physicians and an outside medical expert to defendant with sickle cell disease, finding that BOP medical staff "has taken very little action, and continues to fail to take critical action, to treat [defendant's] life-threatening condition," and that "contrary to the diagnosis of the BOP medical staff . . . he should be hospitalized *now*").

Nor will Mr. Vazquez-Torres's release present a risk of spreading infection to the community. Each BOP facility, including FTC Oklahoma City, has a protocol

13

for release after positive test for Covid-19. These protocols are typically developed in conjunction with the local health departments. The Court can thus condition his release on Mr. Vazquez-Torres meeting that protocol. Doing so decreases, rather than increases, the risk to the community. *See United States v. Arreola-Bretado*, No. 3:19-CR-03410-BTM, ___ F.Supp.3d ___, 2020 WL 2535049 (S.D. Cal. May 15, 2020) (granting compassionate release to Covid-19 positive defendant after concluding she will receive superior medical care out of custody, and further finding that returning defendant to her family is safer to the community than keeping her confined, where she will likely be a risk to other inmates and staff who have not yet contracted Covid-19).

Indeed, numerous courts nationwide have recently granted compassionate release to Covid-19 positive defendants on these and similar grounds. *See, e.g.*, *United States v. Barber,* 18-cr-00446-AA, ECF No. 55 (D. Or. May 12, 2020) (granting compassionate release to defendant with diabetes, hypertension, and obesity, explaining that "not only has defendant shown that he is particularly vulnerable to complications from COVID-19, he has also tested positive for the illness," and that he has not been able to manage his diabetes "as well as he could in a non-custodial environment"); *United States v. Huntley*, No. 13-cr-119-ABJ, ECF No. 263, at 8 n.9, 10 (D.D.C. May 5, 2020) (ordering compassionate release for defendant who tested positive for COVID-19 while motion was being litigated); *United States v. Fischman*, 16-cr-00246-HSG-1, ECF No. 76 (N.D. Cal. May 1, 2020) (granting compassionate release from Terminal Island to Covid-19

14

positive defendant); *United States v. Kriglstein*, 1:16-cr-00663-JCH-1, ECF No. 60 (D.N.M. Apr. 27, 2020) (staying for 5 days release of defendant who was tested for COVID-19 as condition of order granting compassionate release, with positive result); *see also Yeury J.S. v. Decker*, Case No. 2:20-cv-5071-KM, ECF No. 20 (D.N.J. May 11, 2020) (ordering release for Covid-19 positive immigration detainee).

Undersigned counsel has reached out to AUSA Breezye Telfair regarding the government's position on this renewed request, but has not yet received a response.

### *Conclusion*

In sum, this Court has the authority to, and should, reduce Mr. Vazquez-Torres's sentence to time served, following the local protocols for release for Covid-19 positive defendants. Mr. Vazquez-Torres additionally requests the Court impose a special condition that he serve the first 17 months of his supervised release on home confinement, followed by the three years of supervised release as the Court originally ordered.

Respectfully submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

By:         */s/Kate Mollison*

Kate Mollison
Assistant Federal Public Defender
Florida Special A No. A5502482
150 W. Flagler Street, Suite 1700
Miami, Florida 33130
Tel: 305-530-7000
E-Mail Address: kate_mollison@fd.org

**CERTIFICATE OF SERVICE**

      I HEREBY certify that on **June 19, 2020**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


                                                                   /s/ Kate Mollison