UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-cr-20342-BLOOM

UNITED STATES OF AMERICA,
    Plaintiff,

vs.

JORGE VAZQUEZ-TORRES,
    Defendant.
_____

**DEFENDANT'S REPLY IN SUPPORT OF
RENEWED MOTION FOR COMPASSIONATE RELEASE**

Defendant, Jorge Vazquez-Torres, by and through undersigned counsel, respectfully replies to the government's Response (DE 56) opposing his renewed motion for compassionate release (DE 54).

The Court did not sentence Mr. Vazquez-Torres to battle a life-threatening illness while detained far from his family, and without adequate medical care. And even though he has now contracted Covid-19, *it is not too late to reduce his sentence so that he does not have to.* Further, if the Court grants his motion, it can impose restrictions to ensure that proper health protocols are followed upon his release—to protect both Mr. Vazquez-Torres and the broader community.

In its Response, the government does not deny that Mr. Vazquez-Torres has several high-risk medical conditions that will now likely result in severe health complications as a result of Covid-19. Nor does the government contest that Mr. Vazquez-Torres has presented extraordinary and compelling circumstances as required under 18 U.S.C. § 3582(c)(1)(A). Nor does it argue that upon his release,

1

he would pose a danger to anyone in the community, for any reasons related to his offense. Its sole argument now is that *the damage is done, and it is too late to help*. In the government's view, now that Mr. Vazquez-Torres has contracted Covid-19 and is severely ill, his release is too logistically complicated—it could interrupt any necessary medical care to his detriment, and that it would expose more individuals in the community. The government is wrong on both fronts.

As a preliminary matter, when considering whether a defendant's release would pose a danger to the safety of any other person or the community, the compassionate release statute instructs courts to consider the release factors outlined under 18 U.S.C. § 3142(g). *See* 18 U.S.C. § 3582(c)(1)(A). And in granting compassionate release to other Covid-19 positive defendants, several courts have recently faced similar arguments from the government to the one presented here. Yet, as another court has recently held, "§ 3142(g) has not before, and should not now, be read to bar the release of any individual with a communicable disease." *United States v. Arreola-Bretado*, No. 3:19-CR-03410-BTM, ___ F.Supp.3d ___, 2020 WL 2535049, at *6 (S.D. Cal. May 15, 2020).

Further, the government's definition of the "community" in need of protection from exposure to the virus is disturbingly narrow. Mr. Vazquez-Torres is currently being housed in densely populated prison with hundreds of other inmates and staff, who are also at risk of contracting the disease, and whose health should also be of concern. Indeed, if he is currently contagious, many more people are likely to be exposed if he *remains* in the prison—which is a federal transfer facility, with

inmates routinely entering and leaving for other facilities—than by quarantining at home. *See id.* (granting release to Covid-19 positive defendant because "[r]eturning home to her family to quarantine is safer for the community than is keeping [defendant] confined at Otay Mesa where she will likely be a risk to other inmates and staff who have not yet contracted COVID-19.").

As it has routinely done throughout the pandemic, the BOP has mismanaged the isolation of Covid-19 positive inmates, too—and it has unnecessarily exposed sick prisoners to the general population. For example, as reported in a recent BOP press release, Adrian Solazarno, an inmate at FCI Terminal Island who contracted Covid-19 during his incarceration but was reported by BOP to be "recovered" from the illness, thereafter became extremely sick with chest pains and had to be admitted to the hospital—where his condition declined, and he died.[1]

In fact, the "community" that will be exposed while Mr. Vazquez-Torres remains incarcerated includes not only other inmates and staff, but those in the broader region. Prisons are not hermetically sealed; in addition to inmate transfers, staff and contractors move in and out of facilities daily, and back and forth from their home communities. As recent research has shown, some outbreaks in cities and states can be directly traced to Covid-19 "hot spots" in jails and prisons. For example, one in six cases of Covid-19 in both Chicago and Illinois can be traced

---

[1] Bureau of Prisons, *Inmate Death at the FCI Terminal Island*, May 27, 2020, https://www.bop.gov/resources/news/pdfs/20200527_press_release_trm.pdf

3

directly to the Cook County jail in Chicago, where Covid-19 is rampant.[2] As a result of such studies, recent epidemiological models have estimated that, unless the populations of jails and prisons are dramatically reduced, "Covid-19 could claim the lives of approximately 100,000 more people than current projections stipulate."[3] Thus, continuing to detain Mr. Vazquez-Torres does not in any way minimize his exposure to others in the broader community. It simply ensures that he *will* expose other people in the prison to the virus, and that he *will* battle the illness while incarcerated far from his family.

Further, and importantly, Mr. Vazquez has asked that any release order from this Court be issued in accordance with BOP protocols for release after a positive test for Covid-19. As outlined in his motion, *see* DE 54 at 13–14, these protocols are typically developed in accordance with guidance from the local health department, and they will help to minimize any unnecessary community exposure as a result of his release.

Finally, the government argues that releasing Mr. Vazquez-Torres could interrupt his health care while he travels home, to his detriment. But such an argument assumes that he is currently receiving adequate medical care—*which he is not*. Based on recent conversations with his wife, Mr. Vazquez-Torres has not

---

[2] Madison Pauly, *Nearly 1 in 6 Coronavirus Cases in Illinois Could Be Tied to Cook County Jail*, MOTHER JONES, June 5, 2020, https://www.motherjones.com/coronavirus-updates/2020/06/nearly-1-in-6-coronavirus-cases-in-illinois-could-be-tied-to-cook-county-jail/; Matt Masterson, *Report: 1 in 6 Chicago COVID-19 Cases Can Be Tied to Cook County Jail*, WTTW PUBLIC MEDIA, June 4, 2020, https://news.wttw.com/2020/06/04/report-1-6-chicago-covid-19-cases-can-be-tied-cook-county-jail.

[3] American Civil Liberties Union, *Failure to Reduce Jail Population is the Achilles Heel for the Efforts to Mitigate the Spread of Covid-19 in the U.S.*, April 22, 2020, https://www.aclu.org/press-releases/new-model-shows-covid-19-death-toll-100000-higher-current-projections.

been receiving regular or consistent medical care throughout his illness. Nor is he receiving routine care for underlying issues unrelated to Covid-19, as documented in his previous motions.[4] On repeated occasions, he has requested to see the doctor, but has been ignored. Lately, he has had extreme difficulty breathing, in addition to the symptoms outlined in his previous motion. As his wife describes, at nights, he feels "close to death." As another court recently explained, compassionate release is warranted at this juncture because "[t]he risk is simply too great that the BOP will fail to detect a decline in [defendant's] condition and, if his condition suddenly becomes even more emergent than it currently is, that the BOP will fail to provide him the specialized care he needs." *United States v. McCall,* No. 2:18CR95-MHT, ___ F.Supp.3d ___, 2020 WL 2992197, at *2 (M.D. Ala. June 4, 2020) ("The court will not play Russian roulette with [the defendant's] life.").

Nor are the logistical hurdles posed by his current placement in Oklahoma insurmountable. Mr. Vazquez-Torres is open to any release plan the Court proposes. However, based on discussions with his wife, the undersigned proposes the following plan. Mr. Vazquez-Torres's wife is willing and able to travel to drive or fly to Oklahoma City, where she can meet him upon his release. If he is medically stable enough at to travel at that time, she will drive him home to Miami, where he can self-isolate and seek emergency care as needed. If he is not, she will reserve a hotel in the area, and she can assist him while he seeks medical care at an

---

[4] Now that the BOP system has been overwhelmed by the pandemic, many courts have noted this concerning trend. As one district court explained when granting compassionate release, "[W]hat little medical resources FCI Milan has are not being funneled to COVID-19 patients, leaving inmates with chronic conditions, like [defendant], more vulnerable to deterioration or infection." *Snell v. United States*, 2:16-cr-20222-AJT, at 6 (E.D. Mich. Jun. 2, 2020).

Oklahoma hospital. *See, e.g., United States v. Brown*, 18-cr-360-KOB, ECF No. 35 (N.D. Ala. May 22, 2020) (outlining a release plan for Covid-19 positive defendant that includes "release directly to the custody of his mother" for transport home).

In sum, this Court should reduce Mr. Vazquez-Torres's sentence to time served, following the local protocols for release for Covid-19 positive defendants. Mr. Vazquez-Torres additionally requests the Court impose a special condition that he serve the first 17 months of his supervised release on home confinement, followed by the three years of supervised release as the Court originally ordered.

        Respectfully submitted,

        MICHAEL CARUSO
        FEDERAL PUBLIC DEFENDER

By:        */s/Kate Mollison*

        Kate Mollison
        Assistant Federal Public Defender
        Florida Special A No. A5502482
        150 W. Flagler Street, Suite 1700
        Miami, Florida 33130
        Tel: 305-530-7000
        E-Mail Address: kate_mollison@fd.org

## CERTIFICATE OF SERVICE

      I HEREBY certify that on **June 26, 2020**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


                                                         <u>/s/ Kate Mollison</u>